**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| NICOLE D. YOUNG, | ) | CASE NO. 1:23-CV-02411-SL |
| | ) | |
| Plaintiff, | ) | JUDGE SARA LIOI |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | CARMEN E. HENDERSON |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant, | ) | **REPORT & RECOMMENDATION** |
| | ) | |

## I. Introduction

Plaintiff, Nicole D. Young ("Young" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying her application for Supplemental Security Income ("SSI"). This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). For the reasons set forth below, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

## II. Procedural History

On October 4, 2021, Claimant filed an application for SSI, alleging a disability onset date of June 1, 2005. (ECF No. 8, PageID #: 56). The application was denied initially and upon reconsideration, and Claimant requested a hearing before an administrative law judge ("ALJ"). (*Id*.). On November 23, 2022, an ALJ held a hearing, during which Claimant, represented by counsel, and an impartial vocational expert testified. (*Id.*). At the hearing, Claimant requested to amend the alleged onset date to the application date. (*Id.*). On December 14, 2022, the ALJ issued a written decision finding Claimant was not disabled. (*Id*. at PageID #: 56-74). The ALJ's

1

decision became final on October 23, 2023, when the Appeals Council declined further review. (*Id*. at PageID #: 40).

On December 19, 2023, Claimant filed her Complaint to challenge the Commissioner's final decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 10, 12, 13). Claimant asserts the following assignments of error:

> (1) The ALJ erred when she failed to properly evaluate the opinions of the consulting and treating physicians in accordance with 20 CFR 416.920c.

> (2) The ALJ erred and her decision was not supported by substantial evidence as she failed to properly evaluate Plaintiff's headaches at Step Three of the Sequential Evaluation.

> (3) The ALJ erred when she failed to properly assess Plaintiff's obesity and its effect on her ability to engage in substantial gainful activity on a full-time and sustained basis.

> (4) The ALJ erroneously failed to comply with Social Security Ruling 16-3p when evaluating the totality of Plaintiff's symptoms, including the need for frequent bathroom breaks.

(ECF No. 10 at 1).

## III. Background

### A. Relevant Hearing Testimony

The ALJ summarized the relevant testimony from Claimant's hearing:

The claimant alleged that she was unable to perform work due to the limiting symptoms of her severe impairments. The claimant testified that she experienced knee and back pain, constant bathroom trips of at least 10 to 20 times per day totaling three to four hours, and three to four headaches per week lasing [sic] a day or a couple of hours. She explained that she had problems with climbing stairs, and she felt she could only walk 10 to 15 minutes and then needed a long break. She stated that she had a hard time being around people and leaving the house. The claimant testified that she experienced depression, anxiety, and racing thoughts. She explained that she could not imagine being around a lot of people.

(ECF No. 8, PageID #: 64-65).

### B. Relevant Medical Evidence

2

The ALJ also summarized Claimant's health records and symptoms:

The claimant has a history of irritable bowel syndrome, degenerative joint disease knees (right greater than left), mild degenerative disc disease in cervical spine, migraines, hypothyroidism (Hashimoto disease), obesity, unspecified bipolar and related disorders, post-traumatic stress disorder (PTSD), panic disorder, alcohol use disorder in sustained remission, opioid use disease in sustained remission, and cocaine use disorder in sustained remission. Records reflect treatment prior to the application date. (1F).

The claimant treated for irritable bowel syndrome, degenerative joint disease knees (right greater than left), mild degenerative disc disease in cervical spine, migraines, and hypothyroidism (Hashimoto disease) with appointments, physical therapy, and medication. (2F, 9-15; 3F, 6-8;7F, 8-11, 21-24; 9F; 10F; 11F, 12-17, 39-44, 53-58). A right knee x-ray from October 20, 2020 revealed moderate medial and lateral compartment osteoarthritis status post anterior cruciate ligament reconstruction. (1F, 110-111). A CT scan of the brain from January 2, 2021 was unremarkable. (1F, 105-108).

The claimant attended an appointment with Phillip Ajlouny, D.O. on September 21, 2021. The claimant reported that she was doing well with her migraines and was using her Imitrex once or twice per month. She felt much better overall with less frequent headaches. Upon examination, the claimant was alert. She exhibited a normal mood, normal thought content, and normal judgment. Dr. Ajlouny diagnosed the claimant with migraines. He felt her migraines were well managed. He noted that the claimant was doing very well overall. (2F, 13-15). On October 12, 2021, the claimant returned for an appointment with Dr. Ajlouny to discuss abdominal pain and headaches. She reported abdominal pain, stool that was more formed than before, abdominal cramping, and headaches that did not feel like migraine headaches. Upon examination, the claimant exhibited epigastric tenderness to palpation and lower left quadrant tenderness to palpation without guarding. However, she exhibited a normal mood, normal appearance, normal thought content, and normal judgment. Dr. Ajlouny diagnosed the claimant with generalized abdominal pain and epigastric pain. He prescribed sucralfate and recommended she stop Meloxicam for 30 days. He noted that her generalized abdominal pain was improving as her diarrhea had resolved and her stool was more formed. (2F, 9-12).

Treatment records from December 1, 2021 with Michael Kirsh, M.D. for a bleeding ulcer reflect reports by the claimant that she felt better and her prior abdominal cramps had subsided. She explained that she was having less frequent stools. Dr. Kirsh felt that the claimant was doing well on her current regimen. (3F, 6-8).

On January 26, 2022, the claimant attended a consultative physical examination

3

with Dorothy Bradford, M.D. She complained of pain, ocular headaches, and irritable bowel syndrome, diarrhea predominant. Upon examination, the claimant exhibited a soft, nontender, and nondistended abdomen with positive bowel sounds, no spinal tenderness, normal strength in all muscle groups, normal range of motion of all joints, no joint effusions, a normal gait, and 5/5 motor strength in all four extremities. She was in no acute distress. Imaging of the cervical spine from January 26, 2022 showed mild cervical arthritis and normal alignment. (4F, 1). A right knee x-ray from January 26, 2022 revealed moderate to severe tricompartmental osteoarthritis. (4F, 2). Dr. Bradford felt that the claimant had degenerative joint disease of the knees with a normal gait. She also felt that the claimant had mild intermittent asthma, irritable bowel syndrome, and chronic headaches. She provided a medical opinion discussed below. (5F).

Treatment continued with Dr. Ajlouny on April 1, 2022 with complaints of diarrhea that started when she was visiting Florida. She reported abdominal pain as well. Upon examination, she exhibited a normal mood, normal appearance, normal thought content, and normal judgment. Dr. Ajlouny recommended testing and medication as he suspected the cause of the claimant's diarrhea was viral, but he needed to rule out other causes. (7F, 8-11).

On May 31, 2022, the claimant had an appointment with Stephany Hasberry, APN. She reported continued abdominal problems with blood in the stool and always needing to have bowel movements. She explained that she recently began taking meloxicam for her knee pain again. Upon examination, the claimant had abdominal tenderness in the left lower quadrant, but normal bowel sounds. Her behavior was cooperative. Ms. Hasberry recommended the claimant stop meloxicam and prescribed diclofenac gel. She referred the claimant for a gastroenterology appointment. She continued the claimant on all other medication as part of her irritable bowel syndrome regimen. (11F, 53-58). By June 14, 2022, the claimant attended a follow up appointment for rectal bleeding. She explained that all of her symptoms had resolved and she was feeling better. (11F, 39-44).

On June 24, 2022, the claimant attended an initial consultation for knee pain with Donald Stickney, M.D. Upon examination, the claimant's left knee was tender at the joint line with no mechanical pain and she had left knee correctible varus. However, the claimant knees were normal to palpation. She exhibited no effusion or crepitus and her range of motion as full. Her knees were stable. Dr. Stickney diagnosed the claimant with advanced osteoarthritis of the right knee but noted she was young for a total knee arthroplasty. He wanted her to try physical therapy and consider an unloader brace. The claimant explained that she did not want surgery at that time. (9F, 4-7). The claimant had a follow up appointment with Dr. Stickney on August 26, 2022. She explained that she was doing much better and had been doing physical therapy, which she felt had helped significantly. She reported her pain was mild and had lost 15 pounds. Examination findings were similar to those from June 24, 2022 except there was no notation about left knee tenderness or correctible varus. Dr. Stickney felt that the claimant was doing 50%

4

better with physical therapy and the claimant could live with the pain. He wanted her to continue physical therapy and weight loss. (9F, 1-3). Treatment records reflect physical therapy from July 23, 2022 through October 6, 2022 with complaints of right knee pain that gave out at least four times per week. However, records reflect that the claimant found physical therapy very helpful for her and she was able to stand longer durations and walk further than prior to starting physical therapy. Shannon Gale, PT noted on October 6, 2022 that the claimant had been significant improvement overall since starting physical therapy with improved muscle strength, soft tissue mobility and tissue loading, and tolerance with squatting, standing, and ambulation. (10F, 1-39).

The claimant returned for an appointment with Dr. Ajlouny on September 12, 2022. She reported that she was doing physical therapy for her knees. Upon examination, the claimant was obese, but had a normal appearance. She was alert. The claimant exhibited a normal mood, normal behavior, normal thought content, and normal judgment. Dr. Ajlouny diagnosed the claimant with osteoarthritis of both knees. He noted that the claimant was mainly there for disability paperwork. (11F, 12-17).

The claimant also has the severe impairment of obesity, as her longitudinal examinations include body mass index (BMI) scores of 30 or above and show a consistent pattern of obesity. (1F, 10;2F, 30; 5F, 10; 9F, 2; 11F, 13). Records reflect that the claimant's highest weight was 234.9 pounds and her highest BMI was 40.27. (2F, 30). As such, the undersigned finds that due to obesity the claimant experienced greater functional limitations than might be expected from her other severe impairments alone, which is accounted for in the residual functional capacity articulated above. (SSR 19-2p).

The claimant treated with medication management, psychotropic medication, and counseling for unspecified bipolar and related disorders, PTSD, and panic disorder during the relevant period. (2F, 15-18; 7F, 12-20, 24-36; 11F, 1-9, 18-38, 45-46, 59-63). The claimant also had a history of alcohol use disorder in sustained remission, opioid use disease in sustained remission, and cocaine use disorder in sustained remission. (6F). Records reflect treatment prior to the application date. (2F, 5-18).

On November 10, 2021, the claimant attended an initial psychiatric evaluation with Kristen Shaughnessy, APN after being transferred from another provider. She reported nightmares, intrusive memories, flashbacks, irritability, poor concentration, anxiety, irritability, depression, and restlessness. Upon mental status examination, the claimant's reported mood was sad. Her affect was mood congruent. She was tearful throughout. She exhibited fleeting suicidal ideation with no intent or plan. However, the claimant made good eye contact. She had calm motor activity, goal-directed and linear thought process, alert attention, appropriate insight, appropriate judgment, and grossly intact memory. Ms. Shaughnessy diagnosed the claimant with unspecified mood (affective) disorder,

generalized anxiety disorder, and PTSD. She continued Rexulti, trazodone, and hydroxyzine and increased Pristiq and prazosin. (7F, 33-36).

The claimant continued to attend medication management appointments with Ms. Shaughnessy between November 24, 2021 and October 25, 2022. Generally, she complained of nightmares, anxiety, depression, depression and/or anxiety related to family stressors and death, sleeping problems, relationship stressors, and/or difficulty expressing emotion. (7F, 15-18, 24-26, 28-30;11F, 1-4, 34-38). Significant mental status findings include a reported mood that was sad, depressed, and anxious with a mood congruent affect. (7F, 15-18). Records reflect medication changes or increases on November 24, 2021, February 15, 2022, July 1, 2022, and October 25, 2022. (7F, 15-18, 28-30; 11F, 1-4, 34-38).

At times, she reported improvement in mood, improvement in depression, improvement in nightmares since medication increase, a good mood, stable sleep, feeling like she was in a good place mood wise, low depression, low anxiety, no irritable mood swings, stable sleep, stable appetite, manageable anxiety, being busy with home renovations, and/or and having a good trip to Florida. (7F, 12-14, 24-26, 28-30; 11F, 21-25, 59-63). In some records, the claimant's medication was continued as prescribed on March 15, 2022 and August 25, 2022. (7F, 12-14; 11F, 21-25). Other mental status findings include good eye contact, calm motor activity, full range affect or a mood congruent affect with a neutral/euthymic reported mood, goal-directed and linear thought process, alert attention, appropriate insight, appropriate judgment, no suicidal ideation, an appearance that was appropriate for circumstance and neat, and grossly intact memory. (7F, 12-18, 24-26, 28-30; 11F, 1-4, 21-25, 34-38, 59-63).

The claimant also attended counseling appointments between November 11, 2021 and October 5, 2022 with Lori Diamond, LISW and Breanna Wiley, LSW. (7F, 18-20, 24, 28, 32-33; 11F, 5-6, 8-9, 18-19, 26-29, 31-32). Generally, the claimant complained of flashbacks, nightmares, a death of a loved one, increased anxiety and depression, and/or past trauma. (7F, 19-20, 28, 32-33; 11F, 5-6). Significant mental status findings include scared, sad, nervous, and/or anxious mood, depressive cognitions, anxious, guarded, and/or lethargic behavior, and/or slowed, loud, and/or soft speech. (7F, 18-20, 32-33; 11F, 6, 9, 19, 26-27, 29, 31-32, 45-46). At times, the claimant reported doing much better, doing well with nothing coming up since her last session, and/or finishing the remodeling of her home and not feeling as overwhelmed. (7F, 28; 11F, 8). Other mental status findings include appropriate appearance, generally relaxed, engaged, and cooperative behavior, affect appropriate for circumstance, neutral mood, appropriate insight, and/or appropriate judgment. (7F, 18-20, 32-33; 11F, 6, 9, 19, 26-27, 29, 31-32, 45-46).

The claimant also attended a consultative psychological examination with Vernon Brown, Ph.D. on February 4, 2022. She reported night terrors, intermittent suicidal ideations, depression, anxiety, panic attacks, and post-traumatic stress disorders. She explained that she had a previous problems with alcohol, heroin,

and crack cocaine and continued to be involved with Alcoholics Anonymous. Upon mental status examination, the claimant's mood was mildly dysphoric. Her affect was appropriate to her expressed thought content and unrestricted. Her ability to concentrate was significantly impaired. She was able to complete six steps of serial sevens, but she made two errors in the process. The claimant's judgment was good but impulsive. However, she made normal eye contact. She was pleasant and cooperative. Her grooming and hygiene appeared adequate. The claimant's motor activity was normal. Her speech was clear, well formed, goal directed, and responsive. She exhibited no difficulty maintaining her train of thought. Her associations were intact. The claimant's immediate recall ability was good. She was able to correctly recall three of three things after five minutes. Her insight was good. Dr. Brown diagnosed the claimant with unspecified bipolar and related disorders, PTSD, panic disorder, alcohol use disorder in sustained remission, opioid use disorder, moderate, in sustained remission, and cocaine use disorder, mild, in sustained remission. He provided a functional assessment discussed below. (6F).

(ECF No. 8, PageID #: 64-68).

## IV. The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

1. The claimant has not engaged in substantial gainful activity since October 4, 2021, the application date (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairments: irritable bowel syndrome, degenerative joint disease knees (right greater than left), mild degenerative disc disease in cervical spine, migraines, hypothyroidism (Hashimoto disease), obesity, unspecified bipolar and related disorders, post-traumatic stress disorder, panic disorder, alcohol use disorder in sustained remission, opioid use disease in sustained remission, and cocaine use disorder in sustained remission (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant can never climb ladders, ropes, or scaffolds, the claimant can frequently climb ramps and stairs, the claimant can frequently stoop, kneel, crouch, and crawl, the claimant can engage in work tasks that are routine in nature and do not require piece rate type production demands, the claimant can interact with others for work related tasks such as asking questions, clarifying instructions, gathering information, serving, and pointing or

7

directing where items may be placed, and the claimant can make simple work-related decisions.

5. The claimant is unable to perform any past relevant work (20 CFR 416.965).

. . .

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

10. The claimant has not been under a disability, as defined in the Social Security Act, since October 4, 2021, the date the application was filed (20 CFR 416.920(g)).

(ECF No. 8, PageID #: 58-59, 64, 73-74).

## V. Law & Analysis

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial

evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

**B.  Standard for Disability**

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

**C.  Discussion**

Claimant raises four issues on appeal, arguing that the ALJ erred by failing to (1) properly evaluate the medical opinions in accordance with 20 CFR § 416.920c; (2) properly evaluate Claimant's headaches at step three of the sequential evaluation; (3) properly assess Claimant's obesity and its effect on her ability to engage in substantial gainful activity on a full-

time and sustained basis; and (4) comply with Social Security Ruling 16-3p when evaluating the totality of her symptoms, including the need of frequent bathroom breaks. (ECF No. 10 at 25).

### 1.  The ALJ's properly considered the opinion evidence.

Claimant first argues that the ALJ erred in considering the medical opinions.

For claims filed after March 27, 2017, the regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 416.920c(a). Nevertheless, an ALJ must "articulate how [she] considered the medical opinions and prior administrative medical findings" in adjudicating a claim. *Id.* Medical source opinions are evaluated using the factors listed in § 416.920c(c). The factors include supportability; consistency; the source's relationship with the claimant; the source's specialized area of practice, if any; and "other factors that tend to support or contradict a medical opinion." *Id.* at § 416.920c(c). The ALJ is required to explain how she considered the supportability and consistency of a source's medical opinion(s), but generally is not required to discuss other factors. *Id.* at § 416.920c(b)(2). Under the regulations, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be" and "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at § 416.920c(c).

### a.  Dr. Phillip Ajlouny

The ALJ provided the following discussion of Dr. Phillip Ajlouny's opinion:

10

The claimant's provider, Dr. Ajlouny, submitted a physical medical source statement on September 12, 2022. Dr. Ajlouny opined that the claimant could sit 60 minutes and stand 20 minutes at one time. He believed that the claimant could stand and walk less than two hours and sit about four hours total in an eight-hour working day. He felt that the claimant needed to include periods of walking around during an eight-hour workday day every 60 minutes for 10 minutes at a time, and she needed eight (8) unscheduled breaks for five to six minutes due to muscle weakness, irritable bowels, bathroom breaks, pain, and numbness. He further opined the claimant could lift and carry less than 10 pounds to 10 pounds frequently, 20 pounds occasionally, and never lift 50 pounds. He stated that the claimant could grasp, turn, and twist objects, perform fine manipulations, and reach in the front and overhead 50% of an eight-hour workday. He believed she would be off task 20% of a typical workday, would miss about four days of work a month, was capable of low stress work, and her impairments were likely to produce good and bad days. He noted diagnoses of osteoarthritis of the knees based on imaging, and irritable bowel with severe chronic diarrhea. He noted the claimant's treatment response had been fair and weight loss was an important aspect to treatment. (8F). The undersigned finds the opinion not fully persuasive. While Dr. Ajlouny provided some explanation, he did not refer to specific dates, diagnostic tests, or clinical findings to support his opinion, which would have been especially important given the extent of the limitations he gave. For example, he said she would need eight breaks during the day, would be off task 20%, could only use her hands 50% of the day and would be absent from work 4 days a month. These extreme levels of limitation were not supported by clinical findings at the consultative physical examination, other clinical findings from treatment records, and reports of the claimant and providers in records. (2F, 13-15; 3F, 6-8; 5F; 9F; 10F, 1-39; 11F, 39-44). The opinion was somewhat consistent with the claimant's testimony, and the opinion of Consultative Physical Examiner Dr. Bradford that she should be limited to sedentary exertion. However, his opinion was not consistent with the opinions of the State Agency physicians or the bulk of the evidence as discussed within.

(ECF No. 8 at PageID #: 71).

Claimant argues that the ALJ "failed to properly evaluate the supportability and consistency of this opinion" because the "medical evidence supported Dr. Ajlouny's opinion." (ECF No. 10 at 11). Claimant asserts that Dr. Ajlouny's opinion was "supported by Dr. Bradford, the finding of Dr. Stickney that Plaintiff had osteoarthritis of the right knee, and the x-ray evidence of moderate to severe tricompartmental osteoarthritis in the right knee." (*Id.*). Claimant also asserts that the opinion was consistent with the bulk of evidence in the record such that the

ALJ's "rationale for failing to include Dr. Ajlouny's limitations in the RFC was in error and contrary to the medical records documenting that Plaintiff had diagnostic and clinical findings which supported a limitation to no more than the sedentary level of exertion." (*Id*. at 12).

The Commissioner responds that the "ALJ reasonably evaluated the opinion evidence and sufficiently articulated her conclusions with reference to both supportability and consistency" and "[n]othing more was required." (ECF No. 12 at 10). The Commissioner asserts that "Plaintiff's argument—essentially a wish that the ALJ had weighed the evidence differently—should be rejected" since substantial evidence supported the ALJ's conclusion. (*Id*. at 11).

Claimant replies that "the ALJ failed to support her findings regarding [Dr. Ajlouny's] opinions." (ECF No. 13 at 2).

The ALJ's discussion of Dr. Ajlouny's opinion illustrates that she considered the supportability and consistency factors. As to supportability, which addresses the supporting medical evidence and explanations for the opinion, the ALJ specifically noted that while "Dr. Ajlouny provided some explanation, he did not refer to specific dates, diagnostic tests, or clinical findings, to support his opinion, which would have been especially important given the extent of limitations he gave." (ECF No. 8, PageID #: 71). While Claimant argues that the records support Dr. Ajlouny's opinion, the fact remains that Dr. Ajlouny himself did not cite to any of the records within the opinion or provide supporting explanations of the limitations. (*See id*. at PageID #: 582-85). Concerning consistency, the ALJ noted that "[t]hese extreme levels of limitation were not supported by clinical findings at the consultative physical examination, other clinical findings from treatment records, and reports of the claimant and providers in record" and the opinion was inconsistent with the State agency consultants' opinions. (*Id.* at PageID #: 71).

12

The ALJ cited evidence in the record indicating Claimant was experiencing fewer migraines; responding to medication and physical therapy; "doing well overall;" and had normal strength in all extremities, as well as normal gait.  (*Id.* at PageID #: 452, 481, 493-97, 586).  Thus, substantial evidence supports the ALJ's decision that Dr. Ajlouny's opinion was not fully persuasive.

### b.  Dr. Dorothy Bradford

After discussing Dr. Ajlouny's opinion, Claimant briefly argues that the ALJ erred in considering Dr. Dorothy Bradford's opinion. The ALJ provided the following discussion of Dr. Bradford's opinion:

> Consultative Physical Examiner Dr. Bradford felt that she could perform sedentary work. (5F). The undersigned finds the opinion not fully persuasive. While it supports a finding that the claimant required physical functional limitations, the significant limitations offered were not supported by evidence in the file or the examination findings such as strength of 5/5f, full range of motion in her knees and throughout, normal to palpation, and no effusion or crepitus. (2F, 13-15; 3F, 6-8; 5F; 9F; 10F, 1-39; 11F, 39-44). The opinion was somewhat consistent with the claimant's testimony and the opinion of Dr. Ajlouny regarding the amount of time the claimant could sit and stand/walk. But, it was not consistent with the opinions of the State Agency physicians.

(ECF No. 8, PageID #: 70-71).

Claimant argues that "[t]he ALJ failed to support her analysis and made a finding which was neither supported by nor consistent with the evidence in this matter". (ECF No. 10 at 13). Specifically, Claimant argues that the ALJ "erred when she failed to consider Plaintiff's moderate to severe tricompartmental osteoarthritis in her right knee." (*Id.*). Therefore, Claimant asserts that "the ALJ's RFC was not supported by substantial evidence requiring a remand of this matter." (*Id.*).

The Commissioner responds that "the ALJ found the opinion of Dr. Bradford 'not fully persuasive'" because "the suggested limitation to sedentary work was not supported by Dr.

Bradford's own examination or those of others, which noted normal strength, full range of motion, and no effusion or crepitus." (ECF No. 12 at 9-10). The Commissioner asserts that the ALJ "noted that Dr. Bradford's opinion was somewhat consistent with Plaintiff's testimony and the opinion of Dr. Ajlouny in terms of Plaintiff's sitting/standing/walking limitations, but further observed that it was not consistent with the views of the state agency medical consultants which . . . the ALJ reasonably found persuasive." (*Id*. at 10).

Claimant replies that the ALJ erred in considering Dr. Bradford's opinion because it was "based on the fact that Plaintiff had moderate to severe tricompartmental osteoarthritis in her right knee" and corroborated by objective evidence. (ECF No. 13 at 3).

As an initial matter, to the extent Claimant's argues that the ALJ failed to consider her tricompartmental osteoarthritis in assessing Dr. Bradford's opinion, such is not supported by the record. In setting forth the medical history, the ALJ specifically noted that a "right knee x-ray from January 26, 2022 revealed moderate to severe tricompartmental osteoarthritis" and that "Dr. Bradford felt that the claimant had degenerative joint disease of the knees with a normal gait." (ECF No. 8, PageID #: 66). Subsequently, in explaining why she found Claimant's statements about her symptoms inconsistent with the record, the ALJ again cited the January 2022 x-ray finding of tricompartmental osteoarthritis but noted that there was other evidence suggesting that Claimant's symptoms were not as severe as alleged. (*Id.* at PageID #: 69). Thus, while the ALJ did not specifically mention the x-ray in relation to Dr. Bradford's opinion, it is clear that she considered this evidence in reaching her decision.

Additionally, the ALJ's discussion of Dr. Bradford's opinion illustrates that she appropriately considered the supportability and consistency factors. As to supportability, the ALJ noted that the Claimant's significant physical limitations were not "supported by evidence in the

file or examination findings such as strength of 5/5f, full range of motion in her knees and throughout, normal palpitation, and no effusion or crepitus." (ECF No. 8, PageID #: 70). Notably, the ALJ cited Dr. Bradford's own notes, indicating that Claimant had full strength in all muscles, normal gait and grip strength, and full range of motion. (*See id.* at PageID #: 492-97). By citing the same medical records as in the discussion concerning Dr. Ajlouny, the ALJ made clear that she also found that while the opinion was consistent with certain statements by Claimant and Dr. Ajlouny, the limitation to sedentary work was not consistent with the record as a whole. (*See id.* at PageID #: 452, 481, 586, 719). Thus, substantial evidence supports the ALJ's treatment of Dr. Bradford's opinion.

### c.  Dr. Vernon Brown

Claimant next challenges the ALJ's treatment of Dr. Vernon Brown's opinion. The ALJ provided the following discussion of Dr. Brown's opinion:

> Consultative Psychological Examiner Dr. Brown opined that the claimant's ability to understand, remember, and carry out instructions remained grossly intact. He explained that the claimant's ability to maintain attention and concentration to perform simple and complex tasks was somewhat impaired for complex tasks by diminished ability to concentrate. He stated that the claimant's ability to respond appropriately to supervisors and coworkers in a work setting was significantly impaired by panic disorder and mood swings. Dr. Brown felt that the claimant's ability to respond appropriately to pressures in a work setting was significantly impaired by multiple chronic psychiatric symptoms as racing thoughts, mood swings, and panic attacks. (6F). The undersigned finds the opinion not fully persuasive. While the opinion supports a finding that the claimant had severe mental impairments that warranted functional limitations, the opinion used vague, imprecise terminology that was not defined or explained, not appropriately quantified and not used by the DOT to describe work duties, environments or required skills. He also appeared to rely heavily on the claimant's report of history without review of other records to compare and contrast reliability and consistency. Words and phrases that were vague, imprecise included: complex tasks, somewhat impaired, diminished ability, and significantly impaired. The State Agency psychologists agreed that the opinion was not fully persuasive and stated that "[the opinion did] not describe what significant impairments entail[ed]." Moreover, the undersigned finds that the opinion was an overestimate of the severity of symptoms without substantial support. The level of limitation

was not supported by other mental status findings and reports by the claimant in records. (6F; 7F, 12-20, 24-26, 28-30, 32- 33; 11F, 1-4, 6, 8, 9, 19, 21-27, 29, 31-32, 34-38, 45-46, 59-63). The opinion was somewhat consistent with the testimony of the claimant but was not consistent with the opinions of the State Agency psychologists.

(ECF No. 8, PageID #: 72).

Claimant argues that "[t]he treating evidence in this matter supported the findings of Dr. Brown" such that "the ALJ incorrectly failed to include the limitations opined by Dr. Brown that Plaintiff would have significant problems relating to others and responding appropriately to pressures in the work setting." (ECF No. 10 at 13-14). The Commissioner responds that "[t]he ALJ appropriately noted that the opinion relied on undefined terms that were 'vague' and 'imprecise,' such as 'somewhat impaired,' 'significantly impaired,' and 'diminished ability'." (ECF No. 12 at 12). The Commissioner asserts that the ALJ "further noted that Dr. Brown's opinion lacked support for the severity of symptoms identified and instead seemed to rely heavily on Plaintiff's reported history." (*Id.*).

The ALJ's discussion of Dr. Brown's opinion shows that she considered the opinion in accordance with the regulations. As to supportability, the ALJ noted that the opinion was based on "claimant's report of history without review of other records." (ECF No. 8, PageID #: 72). The ALJ addressed consistency by indicating that although the opinion was "somewhat consistent with the testimony of the claimant," it was inconsistent with the State agency opinions and "other mental status findings and reports by the claimant in records." (*Id.*). The specific records cited by the ALJ include Claimant's reports that her mood was good, her insight and judgment were appropriate, her memory was intact, and her symptoms improved with medication and therapy. (*Id.* at PageID #: 527-28, 531, 539, 543, 682, 687, 701). Additionally, the ALJ cited the opinion's use of "vague, imprecise terminology" as an additional reason for

16

finding the opinion not fully persuasive. (*Id.* at PageID #: 72). Such is an appropriate consideration. *See Quisenberry v. Comm'r of Soc. Sec.*, 757 F. App'x 422, 431 (6th Cir. 2018) (finding no reversible error when the ALJ found an opinion vague based on failure to propose specific limitations). Accordingly, substantial evidence supports the ALJ's treatment of Dr. Brown's opinion.

### d. State agency

In addition to challenging the ALJ's treatment of the treating and examining opinions, Claimant challenges the ALJ's treatment of the State agency reviewers' opinions. The ALJ explained her consideration of the State agency physicians' opinions concerning Claimant's physical limitations:

> State Agency physicians, Robert Klinger, M.D. and Mehr Siddiqui, M.D., opined that the claimant could perform work at the light level of exertion with additional postural limitations. They explained that the claimant could frequently climb ramps and stairs, never climb ladders, ropes, and scaffolds, and frequently stoop, kneel, crouch, and crawl. (2A; 4A). The undersigned finds the opinions persuasive as they were supported by the imaging and clinical findings discussed above. (1F, 110-111; 2F, 9-12, 20; 4F; 5F; 9F; 11F, 53-58). Although the opinions were not consistent with the opinions of Consultative Physical Examiner Dr. Bradford, or the claimant's provider, Dr. Ajlouny, or claimant's testimony, they were more persuasive because they were more consistent with and supported by the imaging and clinical findings. The claimant's alleged level of limitation was not supported by clinical findings at the consultative physical examination, other clinical findings from treatment records, and reports of the claimant and providers in records. (2F, 13-15; 3F, 6-8; 5F; 9F; 10F, 1-39; 11F, 39-44).

(ECF No. 8, PageID #: 70). The ALJ also explained her consideration of the psychological opinions:

> State Agency psychologists, Jennifer Whatley, Ph.D. and David Dietz, Ph.D., opined that the claimant could do one to three step tasks that did not require a fast pace and could do work requiring only superficial interactions with the public and fellow employees. They stated that the claimant could do work that did not require a lot of workplace changes and have all major changes explained in advance. At the initial level, Dr. Whatley felt that the claimant had understanding and memory issues, but at the reconsideration level, Dr. Dietz felt that the

claimant did not have issues in that area. (2A; 4A).

The undersigned finds the opinions not fully persuasive. While the opinions support a finding that the claimant had severe mental impairments that warranted functional limitations, the opinions were internally inconsistent and used vague, imprecise terminology not defined or explained and not used by the Dictionary of Occupational Titles to describe work duties, environments or required skills. For these reasons, the undersigned did not use the phrases of "one to three step tasks," "may have difficulty at times" "only requiring superficial interactions," "a lot of work place changes," "all major changes explained in advance." "fast pace." Additionally, the initial opinion contained an internal inconsistency. At the initial level, Dr. Whatley felt that the claimant had memory and understanding issues, but then answered "not significantly limited" for each subpart under that section. At the reconsideration level, Dr. Dietz felt that the claimant did not have memory and understanding issues but adopted all of Dr. Whatley's findings so the analysis for the opinions remains the same. The need for mental limitations was supported by mental status findings from the consultative psychological examination and treatment records discussed above. (6F; 7F, 15-20, 32-36; 11F, 6, 9, 19, 26-27, 29, 31-32, 45-46). The opinions were not consistent with the opinion of Consultative Psychological Examiner Dr. Brown or with the testimony of the claimant regarding her alleged level of limitation due to her severe mental impairments. However, the claimant's alleged level of limitation was not entirely supported by other mental status findings and reports by the claimant in records. (6F; 7F, 12-20, 24-26, 28-30, 32-33; 11F, 1-4, 6, 8, 9, 19, 21-27, 29, 31-32, 34-38, 45-46, 59-63).

(*Id.* at PageID #: 71-72).

Claimant argues that "the ALJ incorrectly adopted the physical findings which were not supported by nor consistent with the medical evidence and ignored the psychological limitations." (ECF No. 10 at 15). Therefore, the Claimant asserts that "the ALJ erroneously did not build an accurate and logical bridge between the evidence documenting Plaintiff's disabling problems and the ALJ's decision to deny benefits." (*Id.*).

The Commissioner argues that the ALJ found the State agency reviewers' opinions concerning Claimant's physical abilities were "more consistent and supported by the imagining, clinical findings, and Plaintiff's self reports." (ECF No. 12 at 9). Concerning the psychological opinions, the Commissioner asserts that the ALJ "agreed that functional limitations were warranted, but she similarly found that they relied on 'vague, imprecise terminology not defined

or explained and not used by the Dictionary of Occupational Titles." (*Id.* at 13). Thus, the Commissioner argues that substantial evidence supports the ALJ's decision and Claimant's argument is nothing more than an invitation to reweigh the evidence. (*Id.*)

The Court agrees with the Commissioner that the ALJ's decision is supported by substantial evidence. The ALJ specifically noted that the opined physical limitations were supported by and consistent with the evidence in the record. (ECF No. 8, PageID #: 70). As already discussed, this evidence included indication that Claimant had normal strength in all extremities and normal gait; responded positively to physical therapy; and her symptoms improved with medication changes. (*Id.* at PageID #: 452, 493-97, 586, 719). Similarly, the ALJ found that while the evidence supported the need for mental limitations, the record did not support the alleged level of limitation. (*Id.* at PageID #: 72). In support, the ALJ cited evidence that Claimant's mood was "good" and she was "doing well;" her insight and judgment were normal and her memory was "grossly intact;" and medication changes improved her symptoms. (*Id.* at PageID #: 527-28, 531, 534, 539-40, 550, 687, 701-02). Thus, substantial evidence supports the ALJ's decision.

Overall, the ALJ complied with the regulations in considering each of the medical opinions and substantial evidence supports the ALJ's decision.

### 2. The ALJ properly considered Claimant's headaches.

Claimant next argues that "the ALJ mentioned Social Security Ruling (Ruling or SSR) 19-4p which deals with all types of primary headaches in conjunction with Listing 11.02" but "beyond a brief discussion of the criteria set forth in the relevant Ruling, the ALJ failed to discuss the fact that Plaintiff continued to have migraines on a weekly basis." (ECF No. 10 at 16-17). Claimant argues that her "continued headaches equaled the criteria of Listing 11.02B" such

that she "should have been found disabled at Step Three of the Sequential Evaluation." (*Id.* at 17). Additionally, Claimant argues that the ALJ "failed to discuss any effects the headaches would have on Plaintiff's ability to engage in substantial gainful activity on a full-time and sustained basis." (*Id.* at 18). Overall, Claimant asserts that the "ALJ failed to analyze Plaintiff's migraine headaches [and their frequency] throughout the sequential evaluation." (*Id.*).

The Commissioner responds that the ALJ "considered listing 11.02, but she noted that no medical expert or other acceptable medical source opined that the headache-related evidence medically equaled listing 11.02." (ECF No. 12 at 14). The Commissioner argues that "Plaintiff's migraines were not of sufficient severity to automatically establish disability at step three" because Claimant's September 2021 appointment with Dr. Ajlouny reflected an improvement in such impairments and "the record does not appear to reflect any further follow up or treatment specific to headaches." (*Id.* at 15). Additionally, the Commissioner argues that the ALJ considered Claimant's migraines in formulating the RFC and specifically found that a limitation to light work was warranted to avoid exacerbating Claimant's migraines, among other conditions. (*Id.* at 16).

The ALJ discussed SSR 19-4 and Listing 11.02 in determining whether Claimant met or equaled a listing:

> Pursuant to SSR 19-4p, primary headaches disorders cannot meet a listing in Appendix 1 because primary headache disorder is not a listed impairment. Instead, the undersigned must determine whether the primary headache disorder, in this case, migraine, alone or in combination with another impairment, medically equals a listing, for example, 11.02 (epilepsy). In this case, the record is absent an opinion by a medical expert or other acceptable medical source that the headache related evidence of record medially equals listing 11.02. Listing 11.02(B) requires dyscognitive seizures occurring at least one a week for at least three consecutive months despite adherence to prescribed treatment. To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02B, the undersigned considers: a detailed description from an acceptable medical source of a typical headache event, including all associated

phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations) (See SSR 19-4p). Listing 11.02(D) requires dyscognitive seizures occurring at least once every two weeks for at least three consecutive months despite adherence to prescribed treatment and marked limitation in one area of functioning. To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02D, the undersigned considers the same factors considered for 11.02B and the undersigned also considers whether the overall effects of the primary headache disorder on functioning results in marked limitation in: physical functioning; understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself (Id.). As for the additional factors set forth in 11.02D, the undersigned finds the claimant's migraines does not result in marked limitation in physical functioning, in conjunction with marked limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself. As discussed in more detail below, the evidence does not establish the claimant's migraines would cause her to medically equal listing 11.02(B) or (D).

(ECF No. 8, PageID #: 61-62).

The Court finds no error in the ALJ's step three analysis. At the hearing, Claimant's counsel did not make any argument that she met a listing but instead specifically indicated that he was "not going to be making any specific arguments . . . at step three of the sequential evaluation." (ECF No. 8, PageID #: 83).  In the decision, the ALJ cited the relevant ruling, set forth the factors she was required to consider, and stated that the evidence does not show that Claimant medically equaled the listing. Nothing more was required to show that the ALJ considered whether Claimant's migraine headaches equaled Listing 11.02. *Snyder v. Comm'r of Soc. Sec.*, No. 22-5948, 2023 WL 3673265, at *4 (6th Cir. May 26, 2023) (citing *Forrest v. Comm'r of Soc. Sec.*, 591 F.

App'x 359, 365 (6th Cir. 2014); *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006)).

Further, substantial evidence supports the ALJ's decision. The evidence Claimant cites shows that while she experienced headaches, they became less frequent over time. (ECF No. 8, PageID #: 53, 452, 500). Claimant wholly fails to direct the Court "to a statement from an acceptable medical source that complies with SSR 19-4p, i.e., one that provides a detailed description of a typical migraine event, the side effects of her medications, and, most importantly, an opinion concerning the limitations in functioning associated with her migraines." *Snyder*, 2023 WL 3673265, at *4. Thus, she has failed to carry her burden in showing that she equaled a listing.

To the extent Claimant's argument can be read as a challenge to the ALJ's failure to include additional limitations in the RFC based on her headaches, such argument is similarly unavailing. Claimant points only to her own testimony to support that additional limitations were warranted. (*See* ECF No. 10 at 17-18). However, as discussed below, the ALJ properly found that Claimant's subjective statements were inconsistent with the evidence. Thus, Claimant has failed to point to any evidence indicating that additional limitations were warranted.

### 3. The ALJ properly considered Claimant's obesity.

Next, Claimant argues that the ALJ did not appropriately consider her obesity as required by SSR 19-2 because "the ALJ failed to provide any documentation which supported her conclusion that based on the combination of her knee osteoarthritis and obesity, Plaintiff could still preform work at the light exertion level." (ECF No. 10 at 19-20). Claimant challenges the ALJ's failure to "to report that Dr. Stickney recommended that she lose weight" and "Dr.

Ajlouny emphasized the importance of weight reduction." (*Id.*).

The Commissioner responds that the ALJ appropriately considered Claimant's obesity. (ECF No. 12 at 16-17). The Commissioner asserts that the ALJ did not need to explicitly discuss the recommendations that Claimant lose weight because, "[a]s the Sixth Circuit has recognized, 'an ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence.'" (*Id.* at 17 (quoting *Kornecy v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006))). The Commissioner also argues that the ALJ cited substantial evidence to support the assessed limitations, including that Claimant "lost 15 pounds during physical therapy, felt that physical therapy helped significantly, and described her pain as mild" and had "intact strength, full range of motion, no knee effusion or crepitus, and a normal gait." (ECF No. 12 at 17). Finally, the Commissioner asserts that Claimant's argument "impermissibly attempts to shift the burden of proof" because "[i]t is Plaintiff, not the ALJ, who had the burden of establishing the extent of Plaintiff's limitations." (*Id.* at 18).

Claimant's argument concerning her obesity is meritless. The ALJ specifically indicated that "due to obesity the claimant experienced greater functional limitations than might be expected from her other severe impairments alone." (ECF No. 8, PageID #: 67). The ALJ noted that the RFC was crafted "[i]n order to avoid exacerbating the claimant's . . . likely mobility issues secondary to obesity" and other conditions. (*Id.* at PageID #: 70). Thus, it is clear that the ALJ considered Claimant's obesity in crafting the RFC and substantial evidence—including, as discussed above, records indicating that Claimant maintained full strength and range of motion and obtained relief through therapy—supports the RFC. It is unclear how the ALJ's failure to discuss the recommendations that Claimant lose weight shows that the ALJ did not consider her obesity. Regardless, as the Commissioner indicates, an ALJ is not required "to discuss every

23

piece of evidence in the record to substantiate the ALJ's decision." *Conner v. Comm'r of Soc. Sec.*, 658 F. App'x 248, 254 (6th Cir. 2016) (citing *Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004)). Thus, Claimant's argument fails.

### 4. The ALJ complied with SSR 16-3p in considering Claimant's subjective complaints.

In her final argument, Claimant argues that "the ALJ erroneously failed to comply with Social Security Ruling 16-3p when evaluating the totality of Plaintiff's symptoms, including the need for frequent bathroom breaks." (ECF No. 10 at 20). Claimant argues that the ALJ "erred when she incorrectly failed to consider all the medical evidence . . . and include the need for these unscheduled bathroom breaks" in the RFC. (*Id.* at 24).

The Commissioner responds that the ALJ's decision "sufficiently addressed" her allegations concerning bathroom breaks. (ECF No. 12 at 19). The Commissioner asserts that while the "ALJ acknowledged Plaintiff's hearing testimony regarding her constant need for bathroom breaks" and "also noted Dr. Ajlouny's opinion that Plaintiff would need multiple unscheduled bathroom breaks during the workday due in part to irritable bowels," the ALJ did not accept this limitation because it was inconsistent with records indicating that Claimant's problems resolved. (*Id.* at 20).

The evaluation of a claimant's subjective complaints rests with the ALJ. *See Siterlet v. Sec'y of HHS*, 823 F.2d 918, 920 (6th Cir. 1987); *Rogers*, 486 F.3d at 248 (noting that "credibility determinations regarding subjective complaints rest with the ALJ"). In evaluating a claimant's symptoms, the ALJ must look to medical evidence, statements by the claimant, other information provided by medical sources, and any other relevant evidence on the record. § 416.929(c); SSR 16-3p, 2017 WL 5180304.

Beyond medical evidence, SSR 16-3p sets forth seven factors that the ALJ should consider: daily activities; location, duration, frequency, and intensity of the pain or other symptoms; factors that precipitate and aggravate the symptoms; type, dosage, effectiveness, and side effects of medication to alleviate pain or other symptoms; treatment other than medication; any measures other than treatment the individual uses to relieve symptoms; and any other factors concerning the individual's functional limitations and restrictions. 2017 WL 5180304 at *7-8. The ALJ need not analyze all seven factors but should show that she considered the relevant evidence. *See Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005). SSR 16-3p states:

> [I]f an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, we will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities or abilities to function independently, appropriately, and effectively in an age-appropriate manner.

The ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms . . . and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 2017 WL 5180304; *see also Felisky v. Bowen*, 35 F.2d 1027, 1036 (6th Cir. 1994) ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing so."). While a reviewing court gives deference to an ALJ's credibility determination, "the ALJ's credibility determination will not be upheld if it is unsupported by the record or insufficiently explained." *Carr v. Comm'r of Soc. Sec.*, No. 3:18CV1639, 2019 WL 2465273, at *10 (N.D. Ohio April 24, 2019) (citing *Rogers*, 486 F.3d at 248–49), *report & recommendation adopted*, 2019 WL 3752687 (N.D. Ohio Aug. 8, 2019).

Here, the ALJ acknowledged Claimant's testimony that she experienced "constant bathroom trips of at least 10 to 20 times per day totaling three to four hours." (ECF No. 8, PageID #: 64). The ALJ concluded that while "claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms," her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consist with the medical evidence and other evidence in the record." (*Id.* at PageID #: 65). The ALJ proceeded to discuss the medical records, citing evidence indicating that in October 2021, Claimant's diarrhea was improving and her stool was more formed than before and in December 2021, Claimant was "doing well on current regimen" following a bleeding ulcer. (*Id.* at PageID #: 448-49, 481). Additionally, the ALJ cited evidence that Claimant complained of diarrhea that started three weeks earlier in April 2022 and sought additional treatment in May 2022 for blood in her stool, but she reported "[a]ll symptoms ha[d] resolved" a month later in June 2022. (*Id.* at PageID #: 524, 719, 733). This discussion makes clear that the ALJ discounted Claimant's subjective testimony concerning her bathroom breaks because it was inconsistent with and unsupported by the record. Substantial evidence supports this conclusion. As the Court will not reweigh the evidence when reviewing an ALJ's decision, no compelling reason exists for the Court to disturb the ALJ's credibility finding. *Cross*, 373 F. Supp. 2d at 732.

**VI. Recommendation**

Based on the foregoing, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

Dated: July 9, 2024

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

---

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F. 3d 520, 530-31 (6th Cir. 2019).